Nash, J.
 

 Before proceeding to the main questions in the cause, we will dispose of the objections, made by the plaintiff, to the title from the executions, binding the property. It is admitted in the deed of trust, that up to the sale then made by Hawkins, the title to the property was in the defendant Jones, and liable to the payment of his debts. The sale by Hawkins was a sale by Jones; it was in bis presence and by his directions. Had Jones the power at the time to make a valid sale of them ? At December term, 1841, of Franklin County Court, a judgment was obtained against Jones and others, in favor of Mcllvain and others, upon which an execution issued directed to the sheriff of Franklin, Jones being a citizen and resident in the county of Granville. This execution was returned to March term, 1842, of Franklin County Court, by the sheriff of that county, as “ delayed by the plaintiff'.” From March an
 
 alias fi. fa.
 
 issued, directed to the sheriff of Granville, and returnable to the ensuing. June term, but there is no evidence it ever was sent to the sheriff of Granville, or was ever in his hands. ■ The record of Franklin Court states, “ upon which there appears no indorsement by the sheriff.” From June term, a
 
 pluries fi. fa.
 
 issued to the sheriff of Granville, which is returned “ executed, &c.” Before this last execution bears
 
 teste,
 
 the negroes had been sold by Hawkins, to-wit,
 
 *291
 
 on the 19th of March,'1842. When a series of executions issue on the same judgments, and have been
 
 bona fide
 
 acted on, the last of them relates to the
 
 teste
 
 of the first and binds the property of the defendant 'from that time. But when the original or any intermediate writ never was delivered to the sheriff, the lien is not carried back beyond the one on which the sheriff acted.
 
 Palmer
 
 v.
 
 Clark,
 
 2 Dev. 354. And when an original
 
 fi. fa.
 
 issued to one county, and an
 
 alias
 
 to another, a sale by the defendant of his property, situated in the latter county, while the
 
 fi.fa.
 
 was in the hands of the sheriff of the former, is good.
 
 Hardy
 
 v.
 
 Jasper,
 
 3 Dev. 158. Here there is no evidence that the
 
 alias
 
 ever left the clerk’s office of Franklin — it was then, as to the question now before us, as if it never had been made out by the clerk. The first precept, that came to the sheriff of Granville, was the
 
 pluries,
 
 and that issued from the June term, 1S42. In the March preceding the negroes had been sold. As to the execution in favor of Cooper, it bore
 
 teste
 
 of August term, 1842, subsequent to the sale by five months. These are the Court executions, under which the negro Daphne was taken out of the possession of the plaintiff and sold. The child of Daphne was taken by G. C. Wiggins, as a constable, under an execution in favor of one Gaylard, issued by a magistrate on the 3d of March, 1843. So far then as these executions were concerned, the sale under them did not divest the plaintiff, Spencer, of the title he had acquired by the sale to him. Hawkins professed to sell as a trustee of Jones, and in that character, conveyed the negroes to Spencer. Jones was present, assenting to and directing the sale. Under the deed of trust, Hawkins had no power to sell. If then, Spencer did not acquire a legal title, he acquired such an one as this Court would protect. Jones would not be permitted to set up any title in himself. If Jones still had the legal title, it was a title without an interest, and a Court of Equity would compel him to convey to the purchaser. The purchasers at
 
 *292
 
 the sale made by the sheriff of Granville and the constable, Wiggins, acquired only the right which was in Jones at the time of the sale with all his liabilities.
 
 Freeman
 
 v.
 
 Hill,
 
 1 Dev. & Bat. 9. The main question, however, in this case, is as to the soundness of the negro Daphne —alledged by the plaintiff and positively denied by the defendants. Has the plaintiff made out his allegation ? The allegation in the bill is, that the negroe Daphne was, at the time he purchased her, unsound, and that Jones knew it. It is not sufficient for him to show her unsound. The testimony, taken by the plaintiff, with the exception of those witnesses, who speak of her in the year 1834, while in the possession of Shelling Parish, consists principally of opinion. In that year she was sick for a month, and complained of pains in her limbs. Dr. Royster, who attended her, thought at first it was a spinal affection, but at length considered it rheumatic and chronic. Drs. Herndon and Paschall, from her appearance and from a scar on the back, which they considered the mark of an abscess, are also of opinion she was afflicted with rheumatism of long standing. Dr. Paschall thinks the scar on the back was the consequence of an abscess, formed during her sickness at Shelling Parish’s, and
 
 yet
 
 neither he nor George Parish, nor Mr. Estis, who knew her while sick there, knew any thing about it. Shelling-Parish says, after her return to his house, she was as healthy :as before she was taken sick. Opposed to this testimony, inconclusive as it is, is the testimony on behalf of the defendants. Willis Loyd knew Daphne from, a child and was overseer for the defendant, Jones, during 1835-7-8, and had been all “’38 and most of the time in the preceding years.” She was' never sick during the time, and did as much work as any hand he had — was considered- sound and healthy. Mrs. Estis lived near - Shelling Parish. The girl Daphne was carried to her house — had a fever — no rheumatism; she has known her from childhood up to 1842 — liever knew any thing the
 
 *293
 
 matter — as sound and as likely as any other negro — the defect in her ankles belonged to her family — her mother the same. Mr. Abitt was an overseer of Jones, during the year 1839 and up to the end of 1842. Daphne was one of his hands, and as good a one as he had — never sick during that time. Several other witnesses testify the same. John B. Hicks’ deposition was taken in August, 1844; he states that Daphne was then in his employment, having hired'her for the year — that she .is sound, healthy, and has not been sick during that time, and is an excellent hand and the' strongest but one he saw in lifting. Mr. George Hicks states, that she was, at the time of taking his deposition, a sound healthy negro and an excellent hand. Other witnesses testify that they had seen her in May 1844 and she was apparently sound and healthy. The rest of the testimony for the defendant is of the same character.
 

 The plaintiff’s proofs do not sustain his allegations. It is not proved that the negro Daphne was, at the time of the sale,unsound. Nor is there the slightest testimony, that, if so, the defendant Jones knew it. We are, on the contrary, satisfied from all the proofs, that she was sound. The testimony of Mr. Estis, we think, accounts satisfactorily for the defect in her feet — her mother was so. The fact is proved by one of the witnesses of the plaintiff, Mr. G. Parish. The bill must be dismissed with costs.
 

 Per Curiam.
 

 Decree accordingly.